IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOB ROSS INC., <br><br>                          Plaintiff, <br><br>             v. <br><br> lang01, <br><br>                    Defendant. | No. 25-cv-09890 <br><br> Judge Georgia N. Alexakis <br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
ELECTRONIC SERVICE OF PROCESS PURSUANT TO FED. R. CIV. P. 4(f)(3)**

Plaintiff Bob Ross Inc. ("Plaintiff") respectfully submits this memorandum in support of its motion for leave to serve Defendant lang01 ("Defendant") electronically pursuant to Federal Rule of Civil Procedure 4(f)(3).

**INTRODUCTION**

This is an action for trademark infringement. Defendant is believed to be a non-U.S. entity, association, or individual, located outside of the United States, who sells, offers for sale, distributes, and/or advertises goods through at least the e-commerce store lang01 on DHgate. Defendant willfully and deliberately uses Plaintiff's trademarks, or reproductions, counterfeits, copies, or colorable imitations thereof, in connection with the sale, offering for sale, distribution, or advertising of goods, without Plaintiff's authorization. As set forth below, because Defendant operates solely online, electronic service is the method of service most likely to successfully provide Defendant with notice of the lawsuit and an opportunity to appear. As such, Plaintiff respectfully requests this Court's authorization to serve process by electronically publishing a link to the Amended Complaint and other relevant documents on a website and by sending an e-mail

1

with a link to said website to an e-mail address for each Defendant address provided by third-party platforms and payment processors.

## STATEMENT OF FACTS

Apart from Defendant's store name and URL, Plaintiff currently possesses no identifying information for Defendant. In most instances, e-commerce sellers must provide an e-mail address and physical address to third-party online marketplace platforms and payment processors when registering their accounts. Decl. of James E. Judge ("Judge Decl."), ¶ 6. The mailing addresses potentially listed on Defendants' listings and/or storefronts are almost certainly fabricated. *Id*. ¶ 7. By contrast, their email addresses have been verified by the sales platform. *Id*. ¶ 8. E-mail address verification is typically a straightforward process where the third-party online marketplace platforms send an e-mail to the provided e-mail address and require the user to click a link in the e-mail. *Id*. However, any verification that may occur for physical addresses is likely not as reliable as e-mail address verification. *Id*. Since an e-commerce store operator can input any physical address, such addresses may be incomplete, false and/or are not where the e-commerce store operator is located. *Id*. As such, even if a physical address is available, it is not a reliable or the best means for providing notice to Defendants.

In addition, e-commerce store operators must provide a valid e-mail address to customers for completing payment and/or managing their e-commerce stores. *Id*. ¶ 9. Moreover, it is necessary for merchants, such as Defendants, who operate entirely online, to visit their e-commerce store to ensure it is functioning and to communicate with customers electronically. E-commerce platforms are also required to obtain a working e-mail address from sellers under the INFORM Consumers ACT. 15 U.S.C. § 45f. As such, it is far more likely that Defendants can be served electronically than through traditional service of process methods.

If granted temporary injunctive relief, Plaintiff will request the email addresses that Defendants used to register their accounts from the Marketplace platforms and that have accordingly been verified by the platforms, and Plaintiff will use these email addresses to serve Defendants. This will allow the parties to reach one another much more expeditiously and efficiently than if Plaintiff is required to serve the Defendants via international postal channels to addresses that are likely illegitimate.

## ARGUMENT

### I. LEGAL STANDARDS

Corporations may be served outside the United States in any manner prescribed by Rule 4(f) for serving an individual, except personal service. Fed. R. Civ. P. 4(h)(2). Rule 4(f), in turn, provides that an individual outside the United States may be served in one of the following ways:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
> >
> > (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
> >
> > (C) unless prohibited by the foreign country's law, by:
> >
> > > [...] (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f). A plaintiff is not required to serve a person or corporation outside of the United States pursuant to the provisions of the Hague Service Convention "where the address of the person

3

to be served with the document is not known." Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, Art. 1, 20 U.S.T. 361, T.I.A.S. No. 6638, 658 U.N.T.S. 163.

Rule 4(f)(3) permits alternative methods of service so long as those methods are consistent with due process, are not prohibited by international agreement, and are approved by a court. *Gianni Versace, S.P.A. v. Yong Peng, et al.*, No. 18-cv-5385 (N.D. Ill. Feb. 27, 2019) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) (affirming trial court's authorization of service pursuant to Rule 4(f)(3) without first exhausting all other options)); *Brookshire Bros., Ltd. v. Chiquita Brands Int'l*, No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (denying motion to quash where the Court previously granted motion to serve by alternative means); *Rio Props. Inc., v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). Due process requires that persons whose property interests are at risk due to government action receive notice and an opportunity to be heard. *Thomas v. United States*, 681 Fed. Appx. 787, 790 (11th Cir. 2017). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The Ninth Circuit in *Rio Properties* held, "without hesitation," that e-mail service of an online business defendant "was constitutionally acceptable." *Rio Props.*, 284 F.3d at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the Internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id*. The decision to allow service by alternate means will be reviewed for an abuse of discretion. *Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 353 F.3d 916, 922 (11th Cir. 2003).

4

II.   **PLAINTIFF IS NOT REQUIRED TO SERVE DEFENDANTS THROUGH HAGUE SERVICE CONVENTION BECAUSE DEFENDANTS' ADDRESSES ARE UNKNOWN**

According to Article 1 of the Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id*.; *see also U.S. Commodity Futures Trading Comm'n v. Rubio*, No. 12–CV–22129, 2012 WL 3614360, at *2 (S.D. Fla. Aug. 21, 2012) (holding that "the Hague Service Convention is not applicable here because it 'shall not apply where the address of the person to be served with the documents is not known.'"); *Philip Morris USA Inc. v. Veles Ltd.,* No. 06 CV 2988(GBD), 2007 WL 725412, at *2 (S.D.N.Y. Mar. 12, 2007) (finding the Hague Service Convention inapplicable because physical addresses could not be confirmed as valid). United States District Courts, including Courts in this District, routinely permit alternative service of process notwithstanding the Hague Convention in similar cases. *See e.g., Peanuts Worldwide LLC v. P'ships, et al.,* 347 F.R.D. 316, 329 (N.D. Ill. 2024) ("Accordingly, the court concludes that Plaintiff was not required to exhaust the option of service under the Convention before seeking alternative service under Rule 4(f)(3); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also, Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (authorizing alternative service pursuant to Fed. R. Civ. P. 4(f)(3)); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 331-32 (S.D.N.Y. 2015) (same); *In re LDK Solar Securities Litigation*, 2008 U.S. Dist. LEXIS 90702, at *11 (N.D. Cal. June 12, 2008) (same); *Williams-Sonoma Inc. v. Friendfinder Inc.*, 2007 U.S. Dist. LEXIS 31299, at *5-7 (N.D. Cal. Apr. 17, 2007) (same); *NBA Properties, Inc. v. P'ships, et al.*, 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021) (same).

Plaintiff has good cause to suspect the Defendants is a resident of China, Hong Kong, or elsewhere in Asia. The People's Republic of China and Vietnam are signatories to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and

Commercial Matters (the "Hague Convention"). From FY 2020 to FY 2024, the U.S. Customs and Border Protection ("CBP") reported a sharp increase in seizures for intellectual property rights (IPR) violations, with over 90% of seized goods in FY 2024 originating from China and Hong Kong, which remain the top sources of counterfeit and infringing imports. *See* U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*, https://www.cbp.gov/sites/default/files/2025-01/IntellectualPropertyRightsSeizureStatisticsFiscalYear2024%20FINAL.pdf. (last visited September 8, 2025).

However, most Marketplace sellers do not provide complete or accurate physical contact information. Judge Decl. ¶¶ 7-8. The contact information typically published by a seller in any Marketplace is rarely complete, and while the published information might lead to a certain city or region in China, there is rarely, if ever, the type of specific physical location information required to successfully deliver a demand letter, let alone effectuate personal service. Some platforms do not even require users to provide their actual name and a physical address. Accordingly, Plaintiff does not know the actual physical address of any Defendant. Sellers of counterfeit products prefer to remain anonymous to avoid being held accountable for their conduct.

Because Plaintiff does not know the Defendants' actual physical addresses, it is not required to serve process on Defendants pursuant to the Hague Service Convention. *U.S. Commodity Futures Trading Comm'n v. Rubio*, 2012 WL 3614360, at *2 (holding that "the Hague Service Convention is not applicable here because it 'shall not apply where the address of the person to be served with the documents is not known.'").

6

### III. SERVICE BY ELECTRONIC MEANS IS NOT PROHIBITED BY INTERNATIONAL AGREEMENT

The Hague Convention also does not preclude service by e-mail. *See e.g., Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, 295 F.R.D. 259, 261 (S.D. Ohio 2013) ("[v]arious courts have agreed that service by e-mail is not prohibited by the Hague Convention"); *Facebook, Inc. v. Banana Ads, LLC*, 2012 U.S. Dist. LEXIS 42160, at *6–7 (N.D. Cal. Mar. 27, 2012) (citing cases where court held that service by email did not violate the Hague Convention as to foreign defendants, including in China). Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props*., 284 F.3d at 1014-15.

The Court may authorize service "by other means not prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). Article 10 of the Hague Service Convention specifies a number of alternative methods of service, including postal channels, judicial officers, or other competent persons. While China objected to all of the alternative methods of service in Article 10, this objection only prohibits service by those means specifically objected to. "Where a signatory nation has objected to only those means of service listed in Article 10, a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article 10." *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011) (authorizing service by email to defendant in India); *F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189(PAE), 2013 WL 841037, at *3-4 (S.D.N.Y. Mar. 7, 2013) (authorizing service by email and Facebook in India where India objected only to means of service listed in Article 10). Because China has not objected to service by electronic means, this Court may authorize such alternative service pursuant to Rule 4(f)(3). *See, e.g., Fendi S.R.L. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 21-60811-CIV-SMITH, 2021 WL 7707270, at *1 (S.D. Fla. Apr. 16, 2021)

(allowing serving Chinese defendants by email and web publication since "China has not objected to service by e-mail or Internet publication. Accordingly, service by these means do not violate an international agreement."); *Chanel, Inc. v. designerchanelgirl.com*, No. 20-62447-CIV-SMITH, 2020 WL 8226843, at *1 (S.D. Fla. Dec. 2, 2020) (same).

Federal courts have authorized a variety of electronic service methods where a plaintiff demonstrates the method is likely to notify a defendant of the pendency of the action. The U.S. Bankruptcy Court for the Northern District of Georgia was one of the first federal courts in the country to authorize service of process by electronic mail. *In re Int'l Telemedia Associates, Inc.*, 245 B.R. 713 (Bankr. N.D. Ga. 2000). In doing so, the Court emphasized the reliability of using the defendant's preferred channels of communication:

> If any methods of communication can be reasonably calculated to provide a defendant with real notice, surely those communication channels utilized and preferred by the defendant himself must be among them.... A defendant should not be allowed to evade service by confining himself to modern technological methods of communication not specifically mentioned in the Federal Rules. Rule 4(f)(3) appears to be designed to prevent such gamesmanship by a party.

*In re Int'l Telemedia*, 245 B.R. at 721. Many courts since the *Telemedia* decision have followed suit and approved of service by electronic means, including email, website publication, and online social media platforms such as Facebook and Twitter. *See, e.g., Rio Props.*, 284 F.3d 1007, 1017 (9th Cir. 2002) (holding "without hesitation" that e-mail service of a foreign online business defendant is constitutional.); *National Association for Stock Car Auto Racing, Inc. v. Does,* 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (authorizing service by publication on plaintiff's website.); *Popular Enters., LLC v. Webcom Media Group, Inc.,* 225 F.R.D. 560, 562 (E.D. Tenn. 2004) (authorizing service by email); *U.S. v. Mohammad*, 249 F. Supp.3d 450, 454 (D.D.C. 2017) (authorizing service by Facebook message and email); *St. Francis Assisi v. Kuwait Finance House*,

8

No. 3:16-cv-3240-LB, 2016 WL 5725002 (N.D. Cal. Sep. 30, 2016) (authorizing service by Twitter).

Further, a number of district courts across the country have held that alternative forms of service pursuant to Rule 4(f)(3), including email service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." Fed. R. Civ. P. 4(f)(3); *Rio Props*. at 1018; *see also, Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016) (authorizing alternative service pursuant to Fed. R. Civ. P. 4(f)(3)); *Sulzer Mixpac AG v. Medenstar Indus. Co*., 312 F.R.D. 329, 331–32 (S.D.N.Y. 2015) (same); *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd*., No. 1:08-cv-02593, 2008 WL 5100414, *2 (N.D. Ill. Dec. 1, 2008) (holding email and facsimile service appropriate); *Popular Enters., LLC v. Webcom Media Group*, 225 F.R.D. 560, 563 (E.D. Tenn. 2004) (quoting *Rio*, 284 F.3d at 1018) (allowing email service); *see also Juniper Networks, Inc. v. Bahattab*, No. 1:07-cv-01771-PLF-AK, 2008 WL 250584, *1-2, (D.D.C. Jan. 30, 2008) (citing *Rio*, 284 F.3d at 1017-1018; other citations omitted) (holding that "in certain circumstances ... service of process via electronic mail ... is appropriate and may be authorized by the Court under Rule 4(f)(3) of the Federal Rules of Civil Procedure.").

Defendant is an e-commerce merchant who purposefully communicates and transacts business exclusively by electronic means. In the typical case where a Defendant is a foreign entity, Defendants conceal their identities and physical locations in an effort to avoid being served, thereby avoiding liability for their illegal conduct. The only means of communicating with such Defendants is by electronic mail or through the messaging service on each Marketplace. Therefore, service by electronic means under these circumstances is particularly warranted. Judge Decl. ¶¶ 7-9.

9

Plaintiff proposes to provide notice of the TRO to the Marketplace, Financial Institutions, and Defendant and to serve Defendant with process by electronic mail using addresses obtained from the Marketplace and/or Financial Institutions. First, Plaintiff submits that this is a highly reliable method of notifying the Defendant, the Marketplace, and the Financial Institutions of the lawsuit and of serving Defendant with process because Defendant exclusively uses its email addresses for corresponding with the Marketplace and Financial Institutions. Second, Plaintiff anticipates that, once the Marketplace disables Defendant's virtual storefront and the Marketplace and/or Financial Institutions freeze Defendants' assets, Defendant, either directly or through counsel, will initiate contact with the undersigned counsel via email. Service of process and related documents using these email addresses, therefore, is very likely to notify Defendant of this action and, as such, comports with Due Process.

Alternatively, should service of process via email fail, Plaintiff can sometimes provide notice using the Marketplace's internal messaging services. Defendant responds to customer inquiries and accepts orders through the Marketplace's messaging services. Therefore, service by this method is also very likely to provide Defendant with actual notice of this action and, therefore, comports with Due Process.

## **CONCLUSION**

For the reasons set forth herein, Plaintiff respectfully requests that this Court authorize Plaintiff to notify Defendant, the Marketplace, and the Financial Institutions of the TRO and to serve the Summons, Amended Complaint, and all subsequent pleadings and documents upon Defendant by electronic mail using email addresses provided by the Marketplacs, the Financial Institutions, or Defendant itself, or by other electronic means such as Marketplace messaging platforms.

10

Dated: October 7, 2025

Respectfully submitted,

Counsel for Plaintiff Bob Ross Inc.

<u>/s/ James E. Judge</u>
Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Ying Chen (IL Bar No. 6346961)
Flener IP Law, LLC
77 W. Washington St., Ste. 800
Chicago, IL 60602
(312) 724-8874
jjudge@fleneriplaw.com

11